BOONE COUNTY, Missouri,
et al., Appellants,

v.

COUNTY EMPLOYEES'
RETIREMENT FUND,
et al., Respondents.

No. WD 57420.

Missouri Court of Appeals,
Western District.

June 27, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 2000.

Application for Transfer Denied
Oct. 3, 2000.

John L. Patton, Mary Mueller, Columbia, for Appellants.

Mark G. Anderson, Jefferson City, Allen D. Allred, Lawrence C. Friedman, Jeffrey R. Fink, St. Louis, for Respondents.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Both the Missouri Employees' Retirement System ("MOSERS") and the County Employees' Retirement Fund ("CERF") denied LaDonya Hill, Forrest Wonneman, and Susan Tatters'[1] partic-

---

1. At oral argument, appellants' counsel mentioned that there are approximately eleven other employees at the Boone County Circuit Court in the same position as the named

ipation in their statutorily authorized retirement programs. Plaintiffs sought a judicial determination that they were entitled to participate in either CERF or MOSERS. The circuit court found for MOSERS and CERF.

On appeal, plaintiffs claim, as a matter of law, that they are Boone County "employees" pursuant to § 50.1000(8) RSMo Supp.1998[2] and are thereby entitled to participate in CERF. In the alternative, they argue that they are state "employees" pursuant to § 104.010(19) and are thereby entitled to participate in MOSERS.

## Background

A brief description of this case's background follows, with additional facts included in our discussion of plaintiffs' points on appeal:

Plaintiffs work at the Thirteenth Judicial Circuit Court, located in Boone County, Missouri, as a court security officer/marshal (Mr. Wonneman), a secretary for the court administrator (Ms. Tatters), and a court services officer (Ms. Hill). They were hired and can be fired by the court administrator.[3] Likewise, their work and job responsibilities are supervised, directed and controlled by the court administrator. Boone County provides all of plaintiffs' compensation and benefits.

Pursuant to § 50.1020 RSMo 1994, from August 28, 1994, (when CERF was created) until 1996, plaintiffs were allowed to participate in CERF by making monthly contributions of two percent of their compensation to CERF. In December of 1996, CERF's board of directors determined

that the county-funded employees who were under the control of the circuit court would no longer be considered "county employees" for purposes of membership in CERF. As a result, plaintiffs' contributions to CERF were discontinued in January of 1997.

After repeated attempts to resolve this matter informally and through administrative processes, plaintiffs filed a petition for declaratory judgment and injunction in the Circuit Court of Cole County. Plaintiffs sought a judicial determination that, as a matter of law, they were eligible "employees" for purposes of participating in CERF, or, in the alternative, MOSERS. The court granted MOSERS' motion to dismiss early in the case, finding that plaintiffs were not state "employees" as defined in § 104.010(19). Thereafter, plaintiffs and the remaining defendants, CERF and its board of directors,[4] filed cross-motions for summary judgment. The court then also determined that plaintiffs were not county "employees" as defined in § 50.1000(8) and entered summary judgment on behalf of CERF. Plaintiffs now appeal the circuit court's determination that they did not, as a matter of law, qualify for participation in either CERF or MOSERS.

## Standard of Review

■ Although MOSERS was dismissed from this action as a result of the court granting its motion to dismiss, Rule 55.27(a) allows a trial court to treat a motion to dismiss for failure to state a claim as one for summary judgment. *See*

---

plaintiffs (appellants). The named plaintiffs apparently agreed to be representative plaintiffs so as to resolve this matter as it relates to all similarly situated employees' eligibility to participate in either pension fund. For purposes of this opinion, they will be collectively referred to as "plaintiffs."

2. The two retirement fund statutes at issue, § 104.010(19) and § 50.1000(8), were both amended in 1998, which is when plaintiffs filed their petition for declaratory judgment.

Thus, unless otherwise noted, all statutory references are to RSMo Supp.1998.

3. As the court administrator's position lies directly below the presiding judge at the Thirteenth Judicial Circuit Court, the administrator's actions are ultimately subject to the judge's supervisory control and approval.

4. CERF and its board of directors will be collectively referred to as "CERF" for purposes of this opinion.

*Want v. Leve,* 574 S.W.2d 700, 709 (Mo. App.1978). In reviewing the record on appeal, it appears likely that the circuit judge had to go outside the pleadings in order to determine that plaintiffs were not "employees" under § 104.010(19) and were therefore not qualified to participate in MOSERS. All parties agreed at oral argument that there are no genuine issues as to any material facts, that the issue is strictly a matter of law, and that they would like a final determination on the merits. Accordingly, we review this matter as it relates to both CERF and MOSERS as a summary judgment proceeding.[5]

■ We review *de novo* a trial court's granting of summary judgment. *Dunagan by and through Dunagan v. Shalom Geriatric Center,* 967 S.W.2d 285, 287 (Mo.App. W.D.1998). In doing so, we consider the record in the light most favorable to plaintiffs and accord plaintiffs all reasonable inferences that may be drawn from the record. *Id.* We consider summary judgment " 'an extreme and drastic remedy' " and are cautious in affirming it, "because the procedure implicates the denial of due process by denying an opposing party [its] day in court." *Horner v. Spalitto,* 1 S.W.3d 519, 522 (Mo.App. W.D.1999) (quoting *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 377 (Mo. banc 1993)). Nonetheless, summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Dunagan,* 967 S.W.2d at 287.

### MOSERS

■ In their first point on appeal, plaintiffs allege the trial court erred in granting MOSERS' motion to dismiss because, pursuant to the definitions set forth in § 104.010, plaintiffs are "employees" of a "department of the state." Thus, they al-

lege they are eligible to participate in MOSERS, notwithstanding the fact that they are paid and otherwise benefited by Boone County, Missouri.

There is no dispute that Boone County, not the state, paid all of plaintiffs' compensation and benefits. Plaintiffs' argument that they are state employees for purposes of MOSERS, despite their source of income, can be summarized as follows: Section 104.010(19)'s definition of "employee" does not exclude employees hired by the circuit court, nor does it exclude plaintiffs simply because the source of the funds for their salary comes from the county. They argue that following § 104.010(19), a person is "employed by the state" who is "employed" by a "department" into a new or existing position and earns a salary or wage in a position normally requiring performance by the person of duties during not less than 1,000 hours per year. Specifically, plaintiffs argue:

> The term "employer" is defined in § 104.010(20) as "a department of the state" and a "department" is defined in § 104.010(16) to include the courts. Since [plaintiffs] are hired by the Thirteenth Judicial Circuit Court through its Court Administrator and the terms and conditions of their employment are governed and controlled by the Court Administrator, they should fall within the definition of employees who are otherwise eligible to participate in MOSERS.

Plaintiffs' (Appellants') brief, p. 22.

■ "Determining whether a particular employee is a state employee depends on the precise language of the particular statute involved and the general principles in the relevant area of law." *Smith v. Thirty–Seventh Judicial Circuit of Missouri,* 847 S.W.2d 755, 758 (Mo. banc 1993). Section 104.010(19)(a),[6] defines a state "employee" as:

---

5. Neither party disputes that summary judgment is an appropriate means for deciding this issue.

6. Sections 104.010(19)(b) through (d) are not applicable to this case.

Any elective or appointive officer or person employed by the state who is employed, promoted or transferred by a department into a new or existing position and earns a salary or wage in a position normally requiring the performance by the person of not less than one thousand hours per year . . .

When engaging in statutory interpretation, we are required "to determine the intent of the legislature from the words used in the statute and give effect to that intent," while keeping in mind that the language used should be given its plain and ordinary meaning. *Missouri Com'n on Human Rights v. Red Dragon Restaurant, Inc.,* 991 S.W.2d 161, 166 (Mo.App. W.D.1999).

If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the statute as it is written. [Citation omitted.] Courts, however, look beyond the plain and ordinary meaning of the statute when its meaning is ambiguous or will lead to an illogical result which defeats the intent of the legislature.

*Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 938 (Mo.App. W.D.1993). "To determine whether a statute is clear and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence." *Russell v. Missouri State Employees' Retirement System,* 4 S.W.3d 554, 556 (Mo.App. W.D. 1999). We may consult other legislative or judicial meanings which have been attached to the term. *See Boyd v. State Bd. of Registration for the Healing Arts,* 916 S.W.2d 311, 315 (Mo.App. E.D.1995) (holding that "[w]hen the legislature enacts a statute referring to terms which have had other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings").

In accordance with Justice Price's concurrence in *Smith,* we believe § 104.010(19)'s definition begs the question in defining an "employee" of the state as one "employed by the state" or who performs duties "on behalf of the state." *Id.* at 760 (interpreting § 105.800's definition of "employee" for workers' compensation purposes. See *Smith* discussion, *infra*). Therefore, we consult other cases that, although not directly on point, interpret the relevant sections and aid us in our determination of who is a state "employee" for purposes of participation in MOSERS. *Boyd,* 916 S.W.2d at 315. In doing so, we must keep in mind that there is no directive that all persons are entitled to participate in a pension plan. MOSERS and CERF are statutory creations, and, in order to be entitled to participate in either, a person must come within the statutes' purviews.

In support of their contentions, plaintiffs cite *Hawkins v. Missouri State Employees' Retirement System,* 487 S.W.2d 580 (Mo.App.1972). *Hawkins* involved court reporters ("reporters") of the Missouri circuit courts who sought a declaratory judgment regarding their eligibility to participate in MOSERS. The court reporters' salaries were paid in part by the state and in part by the county. *Id.* at 582 (citing § 485.065 RSMo 1969, which was amended in 1984 to provide that *all* of a court reporter's salary is to be paid by the state).

At the time *Hawkins* was decided, § 104.010(15) RSMo 1969 defined "employee" as: "any elective or appointive officer or employee of the state who is employed by a department and earns a salary or wage in a position normally requiring the actual performance by him of duties during not less than one thousand five hundred hours per year." That definition essentially mirrors the "employee" definition at issue in § 104.010(19). Yet, unlike the case now before us, *Hawkins* involved court reporters whose positions were statutorily authorized and whose salaries were statutorily mandated to be paid in part by the state and in part by the county. *Hawkins,* 487 S.W.2d at 582; §§ 485.050 –

485.065 RSMo 1969. The court reviewed MOSERS' statutory provisions and found:

> [T]he position of Court Reporter is closely identified with the circuit court.... [C]ircuit judges " 'are judges of the State of Missouri and not merely judges of the circuit in which they are elected or appointed.' " *State ex rel. St. Louis County, et al. v. Kirkpatrick*, 426 S.W.2d 72 [ (Mo.1968) (quoting *Cantrell v. City of Caruthersville*, 363 Mo. 988, 255 S.W.2d 785, 786 (Mo.1953)) ]. Since the circuit judge is an officer or employee of the State, rather than of the County in which his court is located, so also it must follow that the Court Reporter appointed by him and who devotes his time exclusively to the circuit judge is also a "state employee." Any possible doubt on this score would be removed by the provision for salary payment to the Court Reporter of "fifty-five hundred dollars out of the state treasury." § 485.065 [RSMo 1969].

*Hawkins*, 487 S.W.2d at 582. Plaintiffs maintain that the latter portion of this finding as it relates to source of funds was not the foundation upon which the opinion rests. Instead, plaintiffs argue that the term "court," as used in the "department" definition of now § 104.010(16), includes the circuit and appellate courts. Plaintiffs also point out that *Hawkins* ordered MOSERS' compensation computation to include not only funds payable from any state, federal or trust but also "other funds" received by the employees for "personal services performed for the state." *Id.* at 586 (quoting § 104.310(9) RSMo 1969).

Plaintiffs concede that they receive *no* compensation from the state. *Hawkins* relies heavily on the fact that the state paid part of the court reporters' wages as mandated by statute and the fact that their positions were statutorily authorized. *Hawkins*, 487 S.W.2d at 582; *see also* Att'y Gen. Op. No. 25–90 (1990) (interpreting who qualified as a state "employee" for purposes of workers' compensation according to the holdings of *Hawkins* and *Cates*,

*infra* ). In this case, plaintiffs' positions are not statutorily created or authorized nor does the state fund any portion of their salaries. We read *Hawkins* to more readily support MOSERS' position that plaintiffs are not state employees as they receive no compensation from the state. However, given the fact discrepancies, we cannot base our decision entirely on *Hawkins*.

The issue is whether the determination of who is a state "employee" under the MOSERS statute should be determined under a "right to control" test or a source of salary test. *Cates v. Webster*, 727 S.W.2d 901 (Mo. banc 1987) assists us in deciding this matter. In *Cates*, a court bailiff, who was controlled by the circuit court but whose salary and other benefits were funded by Jackson County, was found to be a county rather than a state employee for purposes of the State Legal Expense Fund, § 105.711.2(2) RSMo Supp. 1987. *Cates*, 727 S.W.2d at 907.

Unlike the case now before us, in *Cates* the legislature had not defined "employee" for purposes of the State Legal Expense Fund. Thus, the Court construed the statute in order to determine the intent of the legislature. In doing so, the Court noted, "it is significant that elsewhere the legislature has made the designation of certain judicial personnel as state employees dependent upon their being paid by the state." *Id.* at 905–06 (citing § 483.083 RSMo Supp.1984, concerning compensation for circuit clerks, and citing § 483.245.6 RSMo 1986, concerning salaries of deputy circuit clerks, and discussing that both statutes specifically enumerated both court employees who would be *paid by the state* and therefore *would be state employees* and persons who should continue to be *paid by the counties* and therefore *would not be considered state employees*.) The court concluded:

> Although the quoted provisions relate to personnel other than bailiffs, they exhibit a legislative intent, in apportioning duties and liabilities between the state

and counties, to consider as state employees those judicial personnel paid by the state and to consider as nonstate employees those judicial personnel paid by the county.

*Cates,* 727 S.W.2d at 906. Thus, in accordance with *Cates,* plaintiffs cannot be considered state employees for purposes of participation in MOSERS, because they are paid by Boone County.

*Smith* interpreted the Missouri's workers' compensation statute's definition of "employee," § 105.800 RSMo Supp.1992, which essentially mirrored § 104.010(19)'s "employee" definition. *Smith,* 847 S.W.2d at 755. The *Smith* majority determined that "because the counties [who paid Smith's salary] (and their insurers) [had] covered Smith at the end of the budgeting process, they, at least, [were] liable for his workers' compensation claim." *Id.* at 759. In what Justice Price refers to as dictum in his concurring opinion,[7] the majority also determined that *for purposes of workers' compensation,* the statutory definition of "employee":

> [D]oes not mention, let alone emphasize, the source of the salary or the nominal payer. Reading this statute *in pari materia* with workers' compensation law, it is the right of control and not the source of funds that determines who is the employer.... As Smith is subject to judicial and thus, state control, he can be a "state employee" *for workers' compensation purposes.*

*Id.* at 758 (emphasis added). This reading of *Smith* supports the "right to control" argument advanced by plaintiffs in alleging that they are state employees. However, the court is careful to point out that the opinion is based on an interpretation of traditional workers' compensation laws, because in that arena "[t]he right to control the employee is the 'test often applied' to determine the employer." *Smith,* 847 S.W.2d at 758 (quoting *Lawson v. Lawson,* 415 S.W.2d 313, 319 (Mo.App.1967)). In

such a context it is the reading of the statute *"in pari materia* with workers' compensation law" that compels the court's emphasis on right to control as a determinative factor in that specific case. *Smith,* 847 S.W.2d at 758. We can draw no such parallel in our case.

■ Again, we must determine which fund plaintiffs are "employees" of for purposes of pension benefits under the statutes. Based on the foregoing opinions and MOSERS' statutory scheme, we interpret the General Assembly's intention to be that only those employees whose salaries are paid, at least in part, by the state are state employees for purposes of MOSERS. Under the uncontroverted facts, plaintiffs are hired and fired by the court administrator of the Thirteenth Judicial Circuit Court but are paid by Boone County. While we agree that "it is essential that the court, not the county, control those personnel who assist it in performing their duties,"[8] the aforementioned cases indicate that, in the context of § 104.010(19), the "right to control" is not determinative of the employer/employee relationship, but rather, the "source of income" is the controlling factor.

### *CERF*

■ In the alternative, plaintiffs claim in their second point on appeal that the trial court erred, because they are eligible to participate in CERF as Boone County "employees," § 50.1000(8). The circuit court granted summary judgment to CERF based on its finding that plaintiffs were not county "employees" as defined in § 50.1000(8). Again, we conduct a *de novo* review of that judgment. *Dunagan,* 967 S.W.2d at 287.

The determinative issue is whether the plaintiffs are statutory county "employees," § 50.1000(8). When the legislature created CERF, the relevant portion of § 50.1000(8) RSMo 1994 defined "employ-

---

**7.** *Smith,* 847 S.W.2d at 759.

**8.** *Cates,* 727 S.W.2d at 905.

ee" as "any county elective or appointive officer or employee whose position require[d] the actual performance of duties during not less than one thousand hours per year...." Plaintiffs were allowed to participate in CERF under this definition.

Pursuant to § 50.1032 RSMo 1994, CERF's board then formulated and adopted 16 C.S.R. 50–2.010 (effective May 30, 1996). The stated purpose of this regulation is to "expand[ ] on definitions found in section 50.1000 RSMo." *Id.* The regulation further defines "full-time employee" as:

> An elective or appointive county official or employee regularly employed by a county *who is under the direct control and supervision of a county or an elected or appointed county official and who is subject to continued employment, promotion, salary review or termination by a county or an elected or appointed county official and* who is compensated directly from county funds *and* whose position requires the actual performance of duties during not less than one thousand (1,000) hours per calendar year *except ... employees who receive some compensation from the county but who are subject to hiring, supervision, promotion or termination by an entity other than the county such as ... the circuit court.*

16 C.S.R. 50–2.010(3) (emphasis added). Pursuant to this regulation, in December of 1996, CERF's board of directors evaluated their membership policies and notified the county clerk of Boone County that plaintiffs would no longer be eligible to participate in CERF. On January 6, 1997, the clerk notified plaintiffs that they would be discontinued from participation in CERF. Plaintiffs attempted to informally resolve the matter with CERF but were unsuccessful.

In 1998, when plaintiffs filed their "Petition for Declaratory Judgment and Injunction," the legislature amended § 50.1000(8)'s definition of "employee." The relevant portion now reads:

> Any county ... employee who is hired and fired by the county *and* whose work and responsibilities are directed and controlled by the county *and* who is compensated directly from county funds whose position requires the actual performance of duties during not less than one thousand hours per year ...

§ 50.1000(8) (emphasis added). We must give effect to the statute as written. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 266 (Mo. banc 1998). In addition, 16 C.S.R. 50–2.010 remains in effect today, and "the interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197 (Mo. banc 1972). The conjunctive "ands" in the statute make it clear that the person must meet all requirements of the definition in order to be an "employee" that is eligible to participate in CERF. *See Godat v. Mercantile Bank of Northwest County,* 884 S.W.2d 1, 5 (Mo.App. E.D.1994).

Plaintiffs Forrest Wonneman, Susan Tatters and LaDonya Hill were hired and can be fired by the Thirteenth Judicial Circuit Court through its court administrator. *See* PERSONNEL RULES AND ADMINISTRATIVE REGULATIONS, Rule 900.1, issued by the court administrator of the Thirteenth Judicial Circuit Court. The circuit court also controls their work and responsibilities. A county and a circuit court are separate and distinct entities. *Smith,* 847 S.W.2d at 757. Moreover, the judicial circuit courts are divisions of the state. Mo. Const. art. V, § 15.1. Although plaintiffs receive their pay from the county and work at least 1,000 hours per year, their positions with the court simply do not fulfill the first two requirements of CERF's "employee" definition. In considering the issue of whether the county and county officials were required to pay salary increases ordered by the court for certain of its employees, this court held that "Circuit Court employees are not employees of the County." *Circuit Court of Jackson County v. Jack-*

*son County,* 776 S.W.2d 925, 927 (Mo.App. W.D.1989).

Accordingly, because plaintiffs are not hired and fired by the county, and because their work and responsibilities are controlled by the court rather than the county, they are not county "employees" under § 50.1000(8). Plaintiffs are not, as a matter of law, entitled to participate in CERF, and the trial court properly granted summary judgment on behalf of CERF.

## Conclusion

As plaintiffs do not fit the statutory definition of "employee" for either MOSERS, § 104.010(19), or CERF, § 50.1000(8), they are not eligible to participate in either of those retirement funds. While this result may be unfortunate, we are bound by the language of the applicable statutes and the Missouri Supreme Court's decisions. Any change to include plaintiffs will have to be made by the legislature. We affirm the judgment below.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.